LOUIS J. CUDDY *et ux. vs.* FRANK SARANDREA *et ux.*

JULY 7, 1932.

PRESENT: Stearns, C. J., Rathbun, Sweeney, Murdock, and Hahn, JJ.

466

STEARNS, C. J. This is an action of assumpsit upon a promissory note made by Samuel Jacobson and Annie Jacobson payable to defendants and by them indorsed to the plaintiffs. The declaration alleges that at maturity plaintiffs made demand upon the makers, gave notice of dishonor to defendants, and that said note is still unpaid.

The pleas were the general issue and a special plea alleging that in 1928 the mortgage was foreclosed, the makers dishonored the note by nonpayment, and defendants did not receive notice of said dishonor.

The trial justice directed a verdict for the plaintiffs and denied defendants' motion for a directed verdict. The case is in this court on defendants' exceptions to this action of the trial justice and to the admission and exclusion of evidence.

There is little, if any, dispute as to the facts. January 14, 1926, Samuel Jacobson and his wife made a second mortgage to defendants upon certain property on Taylor street in Providence which was subject to a first mortgage. This second mortgage was given to secure a promissory note which is as follows:

"4500.00     Providence, R. I. January 14, 1926

Four years after date, for value received, we promise to pay Frank Sarandrea and wife Angela Sarandrea or order Forty-Five Hundred ($4500.00) Dollars with interest at the rate of eight per cent per annum payable semi-annually in advance, until said principal sum is paid, whether at or after maturity, and all installments of interest in arrears, whether before or after maturity to bear interest at the rate aforesaid till paid. And we further promise that this note shall immediately become due and payable in event we shall sell and convey the property described in the mortgage deed given as security for this note.

SAMUEL JACOBSON
ANNIE JACOBSON

Secured by mortgage on real estate."

February 15, 1926, defendants indorsed this note and transferred the mortgage to plaintiffs for a valuable consideration. In July, 1927, there was a default by the mortgagor in the payment of taxes and the property was advertised for sale under the mortgage. After some negotiations between counsel for the parties, at the request of the mortgagor and upon the payment of certain expenses and $375 of the principal, the foreclosure proceeding was discontinued. January 14, 1928, interest on the note and the taxes were unpaid and the property was advertised for sale under the mortgage and was sold March 6, 1928, to plaintiffs, the highest bidders, for $450. The note became due January 14, 1930. Plaintiffs indorsed the note and deposited it in their bank for collection. Plaintiffs did not know the address of the Jacobsons; they had made inquiries of relatives and others but were unable to locate them. The bank delivered the note for collection to Edwin C. and Henry W. Potter, copartners and notaries public, whose business for years had been to make presentments of notes and drafts for payment.

At the time of the trial Edwin C. Potter was seriously ill and his doctor would not permit him to testify. But Henry

W. Potter testified and there was introduced in evidence a record of the action taken by Edwin C. Potter which, after including a copy of the note, reads as follows:

"Note of Samuel Jacobson et ux., amount $4500, January 14, 1926. Interest payable July, January; rate 8%. Secured by mortgage recorded in book — page — , in the Office of the Recorder of Deeds of the city of Providence. Title Guarantee Company of Rhode Island, 66 South Main street, Providence, R. I. On this 14th day of January, A. D. 1930, at the request of the Industrial Trust Company of Providence, Rhode Island, presented the original note copied above, at the former residence of Samuel Jacobson and Annie Jacobson, 55B Goddard street, for payment, and was answered by the present occupant 'Samuel Jacobson and Annie Jacobson have moved from here and I do not know their present address.' Whereupon I have noted the non-payment thereof and at 7 o'clock P. M. I put into the post office the written notice directed to Angela Sarandrea, 74 Chapin avenue, City, and one directed to Frank Sarandrea, 74 Chapin avenue, City, and one directed to Nellie J. Cuddy, 81 Norwood avenue, Cranston, R. I. and one directed to Louis J. Cuddy, 81 Norwood avenue, Cranston, R. I.

Edwin C. Potter,<br>Notary Public."

Upon the note was a pencilled notation evidently written by Edwin C. Potter as follows: "Tried Samuel Jacobson, 176 Somerset Street not the right party."

Defendants received notice of dishonor either the day the note was due or the following day. The evidence of the presentment for payment, of necessity, was mainly derived from the records of the notary. It appears in the evidence that there was a three-tenement house in the front and a three-tenement house in the rear of the lot at #55 Goddard street; the front house had the numbers 55 and 55½ upon it. The rear house had the numbers 55A and 55B over the

two entrances; the entrance marked 55A was to the tenements on the second and third floors; the entrance to the tenement on the first floor was marked 55B.

Jacobson testified that he had lived on the first floor and claimed that the number over the entrance to that floor was 55A. Jacobson and his family moved from the mortgaged premises to Goddard street when they were first advertised for sale; he remained there until April, 1929; he then moved to Bogman street and, after living there about three months, again moved to #65 Staniford street where he was living at the time the note matured. This last residence was in a different part of the city, three miles distant from the Goddard street house. A city directory for the year 1929 was admitted in evidence, over defendants' objection, showing the following address of the Jacobsons: "Jacobson, Samuel (Annie) Mgr., h. 55B Goddard." The notary went to two houses, the occupants of which were named Jacobson. He went to Somerset street where he learned that the Jacobsons living there were the wrong parties. He went to the address at which the Jacobsons lived, according to the directory, found it had been their residence, but was told by the occupant that they had moved and their present address was unknown. The notary made the return on his record books and gave notice of dishonor by mail to the Sarandreas.

Cuddy had no information as to the whereabouts of either Jacobson or Sarandrea. He had last been in communication with the maker of the note in July, 1927, and with the payee in February, 1926. As neither the place of payment nor the address of the person to make payment was specified in the note, the question as to the proper observance of the requirements for presentment necessary to charge the indorsers is to be determined by the provisions of G. L. 1923, Chapter 227, Section 79, subsections 3 and 4, and Section 88, as follows: "Sec. 79. Presentment for payment is made at the proper place: . . . 3. Where no place of payment is specified and no address is given and the instrument is presented at the usual place of business or residence of the per-

son to make payment. 4. In any other case if presented to the person to make payment wherever he can be found, or if presented at his last known place of business or residence." "Sec. 88. Presentment for payment is dispensed with: 1. Where after the exercise of reasonable diligence presentment as required by this chapter can not be made."

The provisions for actual presentment or presentment at the usual place or last known place of business or residence are not unconditional. When presentment for payment cannot be made in accordance with subsections 3 or 4, such presentment is dispensed with after the exercise of reasonable diligence. (Sec. 88.)

The usual residence referred to in the statute is the regular, ordinary and habitual residence. In the instant case Jacobson and his family had occupied several different tenements in the two years preceding the maturity of the note. When the presentment for payment was made, Jacobson was listed in the directory as residing where the presentment was made. He had recently moved and his residence was unknown to the occupants of his former tenement. Although his usual place of residence may fairly be considered to be in the last house to which he had moved, this place of residence was unknown to his former neighbors, to plaintiffs and the notary of the bank. It was the duty of the notary to exercise reasonable diligence to ascertain the usual place of residence of Jacobson and, failing to discover that, his last known place of residence.

What constitutes the exercise of due diligence when the facts are undisputed is a question of law for the court and in each case depends on its special circumstances.

Presentment was made by a person authorized to receive payment on behalf of the holder. The indorsement for collection conformed to the local custom and to the general requirements of commercial transactions and of the law.

The person demanding payment of a bill or note must have possession of it at the time and produce or offer to produce it if requested or the demand will be ineffectual.

This is requisite in order that the drawer or acceptor may be able to judge of the genuineness of the instrument; of the right of the holder to receive payment; and that he may immediately reclaim possession of it upon paying the amount. 8 C. J. 559.

Objection is made because the payment of $375 received on foreclosure of the mortgage which is admitted to be a partial payment of the principal of the note was unknown to the notary. Defendants contend that, if the maker had tendered $4,125, the principal sum then due, the notary might not have received it and surrendered the note. The answer to this contention is that the exact amount of the demand intended to be made by the notary is unknown and in the circumstances is unimportant. The amount of interest due from the time of the last payment to January 14, 1928, also was not indorsed on the note. The question of the demand for and the tender of the exact amount due is not an issue in the instant case as the presentment had not reached the stage where a statement of the exact amount due was necessary; also no injury resulted to any of the parties from the failure to make such a statement.

Defendants question the exercise of proper diligence because of the absence of evidence of any inquiry made of the payee. Such an inquiry, if practicable, should be made when neither the maker nor his residence can be found; it is always prudent and often essential. But such an inquiry is not required in all cases as a matter of law. Whether or not it is essential in any particular case depends on the circumstances.

In the instant case plaintiffs, through no fault or neglect of their own, were unable to secure the testimony of the notary and were compelled to rely largely on his records. Although this misfortune does not relieve them from the burden of proving the exercise of reasonable diligence, it is an element to be considered in weighing the evidence. They have produced the only available evidence of the facts. In view of all the evidence we do not think the failure to in-

terrogate the payees can properly be regarded as sufficient cause to warrant the finding of a lack of diligence, particularly as there is only one day allowed for the presentment.

We are of the opinion that a presentment was properly made at the last known place of residence of Jacobson and that the notary was not lacking in due diligence in failing to discover the actual residence of Jacobson.

· Defendants claim that the maturity of the note was accelerated by the act of the transferee of the mortgage in foreclosing it. This contention is without merit. The note had no acceleration provision because of any default in the terms of the mortgage, nor did the mortgage contain any provision that a default therein should accelerate the maturity of the note. The mortgage merely provided that upon default the mortgagee might foreclose and sell, "and from such proceeds to retain all sums hereby secured, whether then due or to fall due thereafter . . . ".

The mortgage was only security for the payment of the debt and the note given therefor. The application of the proceeds of the sale in reduction of the amount of the debt was a benefit and not an injury to the indorsers; it did not operate as an acceleration of the maturity of the note.

The exception to the admission in evidence of the city directory is without merit. The listing therein of defendants' residence was not binding on defendants nor was it sufficient in itself to relieve the notary from making other inquiries to ascertain the maker's residence. But it is a usual practice to resort to such a directory for the information as to residence and such evidence is at least of equal weight and relevancy with the interrogation of neighbors and others.

All defendants' exceptions are overruled and the case is remitted to the Superior Court for the entry of judgment on the verdict.

· *Robinson & Robinson, McGovern & Slattery, Fred B. Perkins,* for plaintiffs.

*Knauer & Fowler, Luigi De Pasquale,* for defendants.